In the Matter of ESTELLE WEISMAN, Appellant, *v.* TEACHERS' RETIREMENT BOARD OF THE CITY OF NEW YORK et al., Respondents.

First Department, May 4, 1965.

*A. Mark Levien* for appellant.

*Eugene M. Kaufman* of counsel (*Seymour B. Quel* and *Joseph M. Callahan, Jr.*, with him on the brief; *Leo A. Larkin, Corporation Counsel*, attorney), for respondents.

BOTEIN, P. J.   Petitioner has been employed as an elementary school teacher by the Board of Education of the City of New York for over 37 years.   During her entire period of employment she has been a member of the Teachers' Retirement System.   The record leaves many unexplained gaps; and some adequate sense of the sequence of events can be stitched out only by recourse to uncontroverted statements in the briefs.

It appears that in September, 1962 petitioner learned that the Medical Division of the Board of Education had reported she was suffering from some undescribed psychiatric disorder.   We are not informed of the text of the report, or, very significant, what conduct of petitioner prompted the inquiry which we assume preceded the inquiry into her mental health.   Petitioner submitted to the Superintendent of Schools and other officials statements of two psychiatrists who had examined her at her own request, and who certified she was normal in all respects, not suffering from any psychiatric disorder, and fit to continue her teaching duties.   She also offered to submit herself to examination by an impartial psychiatrist, but this offer was refused at that time.

In June, 1963 the Superintendent of Schools sent a communication to respondent Teachers' Retirement Board — which administers the Teachers' Retirement System — in which he requested the System to retire petitioner because of disability. Shortly thereafter she submitted herself to examination at the offices of the System and then to interrogation by the three respondent physicians constituting its Medical Board.   Within

a few weeks she received a letter from the secretary of the Retirement System advising her the Medical Board had deferred decision pending examination by a psychiatrist named Dr. James E. Shea. Dr. Shea examined petitioner and in September, 1963 reported to the Retirement System that he "did not find * * * any evidence of psychiatric disorder." A few weeks later, without disclosing to petitioner the substance of Dr. Shea's report, the Retirement System directed petitioner to appear at the office of a psychologist for a three-hour "study" and then to submit to further medical examination by another doctor.

Petitioner refused to submit to this "study" and brought an article 78 proceeding, which resulted in a holding that the Medical Board might call for advisory reports (including a report by a psychologist) and which directed respondents to furnish petitioner with a copy of Dr. Shea's report. Thereupon petitioner was examined by a Mr. Hilpert and a Dr. Portnow, respectively, the psychologist and psychiatrist designated by the Medical Board. Petitioner asserts that copies of their reports were denied her for a long time.

The record contains the reports of Mr. Hilpert and Dr. Portnow. The former's report detailed quite fully the history given him by petitioner and the results of various intelligence and personality tests that he administered. These are areas in which Mr. Hilpert is no doubt well qualified to render opinions. He went further, however, and poached on medical preserves by making psychiatric findings which concluded with the statement that he saw "this patient as an emotionally disturbed patient who would probably have considerable difficulty functioning in an academic setting."

Dr. Portnow was not as assured as Mr. Hilpert—in fact, he stated in effect that he felt petitioner was not presently psychotic. But he did make this observation: "It is my feeling, on the basis of this single interview, that Miss Weisman is fighting against a tremendous void that would appear in her life should she be deprived of her profession. She has been a teacher her entire life and if this is removed, she is then confronted with an isolated and barren existence. It would not surprise me that her somewhat loosely and poorly organized feelings about the circumstances in this case would become solidified into a paranoid defense system against the anxiety of loneliness."

After finally receiving a copy of Dr. Portnow's report, and after the institution of this proceeding, petitioner's attorney requested Dr. Shea to re-examine her. Commenting on Dr. Portnow's scrupulous fairness, Dr. Shea reported no significant conflict between their opinions. Dr. Shea stated: " He [Dr.

Portnow] expresses an opinion of what his diagnosis might be at some future time, but he is fair enough to add immediately, ' I do not feel she is psychotic ' ''. In this second report and subsequent letter Dr. Shea reaffirmed that he '' found no evidence of psychiatric illness ''.

The Medical Board decided to retire petitioner because '' she has certain symptoms of an emotional disturbance which would make it difficult for her to function in an academic setting.'' And it candidly states that its findings were based upon the original report of Dr. Shea and those of Mr. Hilpert and Dr. Portnow. The Medical Board, which is composed of three physicians, makes no pretense of reliance upon its own examination of petitioner.

An affidavit presented on behalf of the Medical Board by one of its members blandly concludes: '' It must also be pointed out that the questions raised as the result of Dr. Shea's report have been answered.'' Have they?

The only one of the three experts to whom the Medical Board referred petitioner who diagnosed petitioner as presently too ill to perform her duties was Mr. Hilpert — a nonmedical person. We doubt his qualifications, at least legally, to render what is in essence a medical diagnosis (*Wyse* v. *Wyse,* 155 N. Y. 367; *Matter of Lindou,* 241 App. Div. 819; *Tarrock* v. *City of Kingston,* 279 App. Div. 693). His opinion hardly furnishes an answer to the question raised by Dr. Shea.

As to Dr. Portnow's report, Dr. Shea very shrewdly points out that his diagnosis is confined to what might happen at some future time. Dr. Portnow appears to have reported to the Medical Board that petitioner is not presently psychotic, but might enter into a paranoid syndrome if removed from her job. Yet in avowed partial reliance on his report the Medical Board voted to do just what Dr. Portnow apprehended could precipitate a paranoid condition — to remove petitioner from her job. Certainly Dr. Portnow's report does not furnish an answer to the negative finding by Dr. Shea.

Even if the medical findings lent some support to respondents' decision to remove petitioner, such findings would be most difficult to evaluate properly because the sparseness of the record does not furnish an adequate setting. There is no meaningful mention of any conduct of petitioner, inside or outside the classroom, that led the Superintendent of Schools to request the Retirement System to retire petitioner because of disability. The physicians' and psychologist's reports mention no such untoward conduct or incidents, either as case history or in any other aspect of their examinations.

Accordingly, the order dismissing the petition should be reversed and the determination of respondents annulled, on the law, the facts and in the exercise of discretion, with costs to petitioner, but without prejudice to the institution of another proceeding for the retirement of petitioner, based upon her present condition and upon a more satisfactory record, as indicated above.

BREITEL, RABIN, STEUER and BASTOW, JJ., concur.

Order, entered on December 7, 1964, unanimously reversed and the determination of the respondents annulled, on the law, the facts and in the exercise of discretion, with $30 costs and disbursements to appellant, but without prejudice to the institution of another proceeding for the retirement of petitioner, based upon her present condition and upon a more satisfactory record, as indicated in the opinion of BOTEIN, P. J., filed herein.